**LeClairRyan**, a Professional Corporation
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, HM Services, LLC d/b/a HouseMaster®

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HM SERVICES, LLC, d/b/a HOUSEMASTER®, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM BASCH, an individual, and DEPENDABLE INSPECTION ENTERPRISES, INC., a New York Corporation, <br><br> Defendants. | Civil Action No. 17-cv-5077 <br><br> **VERIFIED COMPLAINT** |

Plaintiff, HM Services, LLC d/b/a HouseMaster®, by its attorneys, LeClairRyan, P.C. complaining of defendants, William Basch and Dependable Inspection Enterprises, Inc, says:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, HM Services, LLC d/b/a HouseMaster® ("HouseMaster") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Somerville, New Jersey.  HouseMaster is the successor to DBR Franchising, LLC.

2.     Defendant, William Basch ("Basch"), on information and belief, is an individual having an address at 3 Walton Street, Brooklyn, New York. Upon information and belief, Basch is a citizen of the State of New York.

3.      Defendant, Dependable Inspection Enterprises, Inc. ("DIEI"), on information and belief, is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3 Walton Street, Brooklyn, New York.

4.      Upon information and belief, Basch is the sole officer and shareholder of DIEI.

5.      Upon information and belief, Basch and/or DIEI do business as "*Master Inspection Services*" in New York – specifically in Brooklyn, Queens, Staten Island and Manhattan.

6.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  The defendants reside in and/or conduct business in this District.  A substantial part of the events giving rise to this action occurred in this District and the majority of the subject property is located in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The HouseMaster® Marks

9.      HouseMaster is one of the oldest and most respected home inspection companies in the United States and is widely known as a provider of franchised home inspection services.

10.      HouseMaster owns and has the exclusive right to use and license certain trade names, trademarks and service marks, logos and deviations thereof, including the name HouseMaster®, which have been registered on the Principal Register of the United States Patent and Trademark Office (the "HouseMaster® Marks").

11.     HouseMaster also owns and has the exclusive right to use and license that certain distinctive "HouseMaster® Method", which includes confidential and proprietary business systems, techniques and formats under the HouseMaster® name and certain services afforded to franchisees of HouseMaster, including strategies for marketing and promoting an inspection service business.

12.     HouseMaster, through its predecessors, first used certain of the HouseMaster® Marks in 1979 and the HouseMaster® Marks are in full force and effect.  Certain of the registered HouseMaster® Marks are incontestable pursuant to 15 U.S.C. § 1065.

13.     HouseMaster has given notice to the public of the registration of the HouseMaster® Marks as provided in 15 U.S.C. § 1111.

14.     HouseMaster uses or has used the name "*HouseMaster*" among others, as abbreviations of its brand name.

15.     HouseMaster has registered the HouseMaster® Marks as service marks with the US Patent and Trademark Office ("USPTO") and owns, among others, the following valid service mark registrations for the HouseMaster® Marks: 1515093, 1960067, 1970471, 2845309, 3085974, 1850656 and 1844346.

16.     The USPTO registrations for the HouseMaster® Marks are valid and subsisting and in full force and effect and appear on the Principal Trademark Register of the USPTO.

17.     Certain of the above listed HouseMaster® Marks have achieved incontestable status pursuant to the Lanham Act, 15 U.S.C. § 1065.  Such incontestable federal registrations for the HouseMaster® Marks constitute conclusive evidence of the validity of the HouseMaster® Marks and HouseMaster's ownership of the HouseMaster® Marks and the exclusive right to use the marks nationwide.  Those registrations of the HouseMaster® Marks

which have not yet achieved incontestable status constitute prima facie evidence of the validity and HouseMaster's ownership of such HouseMaster® Marks.

18.     Through its franchise system, HouseMaster markets, promotes and provides services to its home inspection franchisees throughout the United States.  In order to identify the origin of their home inspection services, HouseMaster allows its franchisees to utilize the HouseMaster® Marks and to promote the HouseMaster® brand name pursuant to the terms of franchise agreements.

19.     HouseMaster has invested substantial effort over a long period of time, including significant sums of money, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the HouseMaster® Marks as distinctly designating HouseMaster® home inspection services as originating with HouseMaster or a franchisee of HouseMaster.

20.     The value of the goodwill developed in the HouseMaster® Marks does not admit of precise monetary calculation, however, because HouseMaster is one of the oldest and most respected home inspection franchise systems in the United States and is widely known as a provider of home inspection services, the value of HouseMaster's goodwill is extremely significant.

21.      The HouseMaster® Marks are famous throughout the United States.

<u>**The Franchise Agreement**</u>

22.     On or about September 1, 2009, Basch entered into a Franchise Agreement with DBR Franchising, LLC, HouseMaster's predecessor in interest, to operate a HouseMaster® home inspection service franchised business located at 3 Walton Street, Brooklyn, New York (the "<u>Facility</u>").  A true copy of the Franchise Agreement is attached hereto as **Exhibit A**.

4

23.    Pursuant to Section I.B of the Franchise Agreement, Basch was obligated to operate a HouseMaster® home inspection service until August 31, 2014, during which time Basch was permitted to use the HouseMaster® Marks in association with the operation of the Facility as part of HouseMaster's franchise system.

24.    On or about December 4, 2014, the parties executed an Addendum to the Franchise Agreement (the "Addendum").  A true copy of the Addendum is attached hereto as **Exhibit B**.  The Franchise Agreement and Addendum are collectively referred to herein as the "Franchise Agreement".

25.    Among other things the Addendum extended the term of the Franchise Agreement until November 30, 2015.

26.    Pursuant to Section II.A of the Franchise Agreement, Basch was required to make certain periodic payments to HouseMaster for royalty-service fees, advertising-promotion contributions, conference registration fees, interest, and other fees (collectively, "Periodic Fees").

27.    Pursuant to Section II.A.2 of the Franchise Agreement, Basch agreed that "[f]or all delinquent payments, [Basch] shall pay to [HouseMaster] 7½% of Gross Sales for the royalty-service fee and 2½% of Gross Sales for advertising-promotion contribution regardless of [Basch's] level of annual Gross Sales for the period or periods payments are delinquent, and [HouseMaster] shall have the right in its discretion to charge either a late payment fee not to exceed Ten Dollars ($10.00) per day for each day the payments remain delinquent, or interest at a rate of eight percent (8%) per annum."

28.    Pursuant to Section II.B.3 of the Franchise Agreement, Basch agreed to maintain full, complete and accurate books and records relating to gross sales, including bank statements,

[Basch's] business and personal income tax returns.  Pursuant to Section II.B.4 of the Franchise Agreement, Basch agreed to allow HouseMaster to examine or audit these books and records.

29.     Section XI.A of the Franchise Agreement specified certain of Basch's obligations in the event of a termination or expiration of the Franchise Agreement, including its obligation to immediately cease using all of the HouseMaster® Marks, and its obligation to not use a confusingly similar mark or name.

30.     Pursuant to Section XI.B of the Franchise Agreement, upon termination or expiration of the Franchise Agreement, Basch was required to "promptly pay to [HouseMaster] all sums owing from [Basch] to [HouseMaster], including any amounts owing under any outstanding loan agreement or promissory note."

31.     Pursuant to Section XI.D of the Franchise Agreement, upon termination or expiration of the Franchise Agreement, Basch agreed that HouseMaster "has the sole right to and interest in all telephone numbers and directory listings associated with" the HouseMaster franchised business.  Basch agreed to "to assign immediately to [HouseMaster] any and all business telephone numbers used by [Basch] . . .  in the conduct or promotion of the Franchised Business."   In furtherance of this provision, Basch executed a Conditional Assignment of Franchisee's Telephone Numbers attached to the Franchise Agreement as Exhibit A.

32.     Pursuant to Section XI.G of the Franchise Agreement, upon termination or expiration of the Franchise Agreement, Basch was required to refrain from identifying or referring to himself under the name "HouseMaster," or any name or mark confusingly similar thereto, and immediately remove all references on the internet that identify or affiliate Basch with the HouseMaster® System, including but not limited to directory listings, contact

information or association listings, or on any other website, blog, vlog, social network or other on-line venue or communication on the internet.

33.     Section XI of the Franchise Agreement sets forth additional post termination obligations of Basch including, but not limited to, the obligation of Basch to turnover certain property used in connection with the franchised business to HouseMaster.

34.     Pursuant to Section XII.B.5 of the Franchise Agreement, Basch agreed that, for a period of eighteen (18) months after termination or expiration of the Franchise Agreement, he would not compete with HouseMaster by operating a home inspection service within a specific geographic location/territory.

35.     Pursuant to Section XII.C of the Franchise Agreement, in the event Basch violated the terms of the covenant not to compete, Basch agreed to pay HouseMaster Twenty-Five Thousand Dollars ($25,000) or twenty percent (20%) of Basch's annual gross sales as calculated from the average of the proceeding three (3) years, whichever is greater, in addition to liquidated damages.

36.     Pursuant to Section XIII.H of the Franchise Agreement, Basch agreed that under certain circumstances, HouseMaster is entitled to recover as liquidated damages of "the greater amount of either: (i) thirty percent (30%) of [Basch's] annual Gross Sales from the preceding year; or (ii) the cost of NIBI training (for all personnel who attended) plus Fifty-Two Thousand Five Hundred Dollars ($52,500.00)."

37.     Pursuant to section XIII.D of the Franchise Agreement, Basch agreed that the party prevailing in any judicial proceeding "shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accounting and attorneys' fees."

## The Installment Note

38.     In connection with entering into the Addendum, Basch executed and conveyed to HouseMaster an Installment Note in the original principal amount of $29,448.06 and effective as of November 26, 2014 (the "Note").  A true copy of the Note is attached hereto as **Exhibit C**.

39.     Pursuant to the terms of the Note, the "unpaid principal and accrued interest shall be payable in monthly installments, payable on the first of each month beginning December 1, 2014 and continuing until December 1, 2016."

40.     The Note provides that "if any payment obligation under this Note is not paid when due, [Basch] promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process, without protest of any kind, legal or otherwise. If the [N]ote remains unpaid for an additional 30 days after [HouseMaster] gives demand, [Basch] shall be required to pay a 5% late charge based on the Installment amount.  Each late Installment shall make another 5% due."

## The Expiration and Termination of the Franchise Agreement

41.     In or around September 2015, Basch and/or DIEI began operating a competing business known as Master Inspection Services.  The operation of Master Inspection Services by Basch and/or DIEI violated the terms of the Franchise Agreement.

42.     On November 30, 2015 (the "Termination Date"), the Franchise Agreement expired and terminated.

43.     Upon termination of the Franchise Agreement, among other things, Basch was required to promptly pay HouseMaster all sums due and owing HouseMaster under the Franchise Agreement.

8

44.     Upon termination of the Franchise Agreement, among other things, Basch was no longer authorized to use the HouseMaster® Marks or HouseMaster® Method and Basch was required to satisfy his post termination obligations to HouseMaster as and when set forth in the Franchise Agreement.

45.     The termination of the Franchise Agreement precludes Basch from any further use of the HouseMaster® Marks and HouseMaster® Method.

46.     By letter dated December 3, 2015, a true copy of which is attached hereto as **Exhibit D**, HouseMaster advised Basch that he owed Periodic Fees to HouseMaster and that he was to immediately discontinue the use of all trade names, service marks, logos, websites, and other forms of advertising, and to cease operations of any competing home inspection services by December 18, 2015.

47.     Basch failed to pay HouseMaster the demanded Periodic Fees as and when demanded in the letter of December 3, 2015 - or at any time thereafter.

48.     Exclusive of attorney's fees and costs, as of July 31, 2017 Basch was indebted to HouseMaster in the amount of $21,244.14 in Periodic Fees due under the Franchise Agreement, plus interest, fees and costs.

49.     After the Termination Date, Basch and/or DIEI continued to use the HouseMaster® Marks and HouseMaster® Method, and materials confusingly similar thereto and the telephone number associated with the franchised business (718.384.1122), in violation of the Franchise Agreement and applicable law.

50.     Most, if not all, of the violations of Basch complained of by HouseMaster in its December 3, 2015 letter continue to exist.

9

51.     After the Termination Date, Basch has also failed to comply with his post termination obligations under the Franchise Agreement, including Section XI.

52.     After the Termination Date, Basch and/or DIEI have engaged in the unauthorized use of the HouseMaster® Marks, and marks confusingly similar to the HouseMaster® Marks, in flagrant violation of HouseMaster's trademark rights.

53.     Basch and/or DIEI continue to use HouseMaster® signage, including signage using similar trade dress, color schemes, font, logo, architectural features, telephone number, and a confusingly similar name, specifically "*Master Inspection Services*", on the Internet, and in other public areas, all within view of the public, in order to induce the public to use home inspection services.

54.     Basch and/or DIEI continue to misuse the HouseMaster® Marks, and marks confusingly similar to the HouseMaster® Marks despite receiving notification from HouseMaster to cease and desist.

55.     Basch is also in default under the terms of the Note.

56.     Pursuant to the terms of the Note, all outstanding and unpaid principal, interest and costs became payable by Basch to HouseMaster on December 1, 2016.

57.     Despite demands from HouseMaster, Basch has failed to pay HouseMaster amounts due and owing HouseMaster under the Note on the maturity date of December 1, 2016 - or at any time thereafter.

58.     Exclusive of attorney's fees and costs, as of July 31, 2017 Basch was indebted to HouseMaster in the amount of $15,312.06 under the Note, plus interest fees and costs.

## FIRST COUNT

### (Lanham Act)

59.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

60.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

61.     Basch and/or DIEI marketed, promoted, and advertised, and continue to market, promote, and advertise through the unauthorized use of the HouseMaster® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

62.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

63.     The acts of Basch and/or DIEI in marketing, promoting, and advertising home inspection services, through and with the HouseMaster® Marks, constitute:

(i)     a false designation of origin;

(ii)    a false and misleading description of fact; and

(iii)   a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Basch's and/or DIEI's home inspection services with HouseMaster, and to cause confusion, or to cause mistake, or deception, to the effect that HouseMaster sponsors or approves of the home inspection services that Basch provides, all in violation of Section 43(a) of the Lanham Act.

64.    Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

65.    Basch's and/or DIEI's use of the HouseMaster® Marks in connection with home inspection services, after the HouseMaster® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the HouseMaster® Marks, and lessened and will continue to lessen the capacity of the HouseMaster® Marks to identify and distinguish the home inspection services of HouseMaster, all in violation of Section 43(c) of the Lanham Act.

66.    Basch's and/or DIEI's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

67.     Basch's and/or DIEI's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on HouseMaster.

68.     HouseMaster has no adequate remedy at law.

69.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) and (c), HouseMaster demands judgment against Basch and DIEI: (a) Preliminarily and permanently restraining and enjoining Basch, DIEI and their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or advertising home inspection services through and with the HouseMaster® Marks; and (b) Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## <u>SECOND COUNT</u>

### (Cybersquatting)

70.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

71.     Pursuant to section XI.G of the Franchise Agreement, among other things, Basch was prohibited from using or establishing a website, blog, vlog, social network on the worldwide web which was similar or confusing with the HouseMaster® Marks.

72.     Despite this obligation, Basch continued to utilize the website www.masterinspectionservices.com, a confusingly similar name to the HouseMaster® Marks,

and which seeks to drive, and has driven, commercial internet traffic to Basch's website through the use of the HouseMaster® name.

73.     Section 1125(d) was added to the Lanham Act to provide a claim against anyone who registers, traffics in, or uses a domain name that is identical or confusingly similar to [the owner's] trademark with the bad faith intent to profit from the good will associated with the trademark.

74.     15 U.S.C. §1125(d)(1)(A) provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person —
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that —
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36

75.     In continuing to use the HouseMaster® Marks within his website after termination of the Franchise Agreement, Basch acted with bad-faith intent to profit from the HouseMaster® Mark and has registered, trafficked in, or used a domain name that is confusingly similar to HouseMaster's protected marks.

**WHEREFORE**, HouseMaster demands judgment against Basch as follows:

(a)     granting injunctive relief, on a preliminary and permanent basis, pursuant to 15 U.S.C. §1114(b), enjoining Basch from continued use of the *www.masterinspectionservices.com*

14

domain name, or any other name which is identical or confusingly similar to the HouseMaster® Marks;

       (b)    monetary damages pursuant to 15 U.S.C. §1117(a) of Basch's profits, damages sustained by the HouseMaster, and the costs of the action;

       (c)    treble damages pursuant to 15 U.S.C. §1117(b);

       (d)    alternatively, statutory damages pursuant to 15 U.S.C. §1117(d) in an amount, in the Court's discretion, of not less than $1,000 and not more than $100,000;

       (e)    costs of suit, including a reasonable attorney's fee; and

       (f)    for whatever further relief that this Court deems just and proper

## THIRD COUNT

### (Accounting)

76.    HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

77.    Pursuant to sections II.B.3 and II.B.4 of the Franchise Agreement, Basch agreed to allow HouseMaster to examine and audit Basch's financial information, including bank statements and Basch's business and personal income tax returns, relating to gross sales earned by Basch.

78.    Basch has engaged in acts and practices, as described, which amount to infringement of the HouseMaster® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

79.    As a result, Basch owes restitution and the disgorgement of profits, in an amount unknown to HouseMaster, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Basch.

**WHEREFORE**, HouseMaster demands judgment ordering Basch to: (a) account to HouseMaster for any and all revenue derived as a result of marketing, promoting, or advertising home inspection services from September 1, 2009 through the Termination Date, and (b) account to HouseMaster for any and all revenue derived as a result of marketing, promoting, or advertising home inspection services from the Termination Date to a date as determined by this Court.

<u>FOURTH COUNT</u>

**(Breach of Franchise Agreement: Periodic Fees)**

80.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

81.     Pursuant to Section II.A of the Franchise Agreement, Basch was obligated to remit Periodic Fees to HouseMaster.

82.     Despite his obligation to do so, Basch failed to remit certain of the Periodic Fees due and owing under the Franchise Agreement.

83.     Exclusive of attorney's fees and costs, as of July 31, 2017 Basch was indebted to HouseMaster in the amount of $21,244.14 in Periodic Fees due under the Franchise Agreement, plus interest, fees and costs.

84.     Basch's failure to remit the agreed Periodic Fees constitutes a breach of the Franchise Agreement and has damaged HouseMaster.

**WHEREFORE**, HouseMaster demands judgment against Basch for the Periodic Fees due and owing under the Franchise Agreement, in at least the amount of $21,244.14 plus interest, attorneys' fees, and costs of suit.

16

## FIFTH COUNT

### (Unjust Enrichment)

85.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

86.     At the time of expiration and termination of the Franchise Agreement, Basch was obligated to pay HouseMaster Periodic Fees.

87.     Despite his obligation to do so, Basch failed to pay certain of the Periodic Fees due and owing under the Franchise Agreement and paid no royalty or other Periodic Fees to HouseMaster in return for that benefit.

88.     Basch's failure to compensation HouseMaster constitutes unjust enrichment and has damaged HouseMaster.

**WHEREFORE**, HouseMaster demands judgment against Basch for the Periodic Fees due and owing under the Franchise Agreement, in an amount to be determined at trial, together with interest, attorneys' fees, and costs of suit.

## SIXTH COUNT

### (Breach of Contract: Promissory Note)

89.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

90.     Pursuant to the terms of the Note, Basch was required make monthly installments, payable on the first of each month, beginning December 1, 2014 and continuing until December 1, 2016.

91.     Despite his obligation to do so, Basch has failed to make payments as and when required under the Note.

92.     Exclusive of attorney's fees and costs, as of July 31, 2017 Basch was indebted to HouseMaster in the amount of $15,312.06 due under the Note, plus interest, fees and costs.

93.     Basch's failure to comply with the terms of the Note constitutes a breach of the Note and has damaged HouseMaster.

94.     In addition, Basch's failure to comply with the terms of the Note constitutes unjust enrichment and has damaged HouseMaster.

**WHEREFORE**, HouseMaster demands judgment against defendants for the sums due and owing under the Note, in the amount of $15,312.06, together with interest, attorneys' fees, and costs of suit.

### SEVENTH COUNT

**(Breach of Contract: Covenant Not to Compete)**

95.     HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

96.     Pursuant to Section XII.B.5 of the Franchise Agreement, Basch agreed that, for a period of eighteen (18) months after termination or expiration of the Franchise Agreement, he would not compete with HouseMaster by operating a home inspection service (a) within Richmond County, New York; (b) within any other geographic area in which HouseMaster franchisees were currently operating; and within a radius of twenty-five (25) miles of the limited area granted to any other HouseMaster franchisee.

97.     Notwithstanding Basch's covenant, after the Termination Date, Basch continued to operate a home inspection service within Richmond County, New York.

98.     Basch's failure to comply with the terms of the Covenant Not to Compete constitutes a breach of the Franchise Agreement and has damaged HouseMaster.

99.     Basch's failure to comply with the terms of the Covenant Not to Compete constitutes unjust enrichment and has damaged HouseMaster.

**WHEREFORE**, HouseMaster demand judgment against Basch in the amount of $25,000 or 20% of Basch's annual gross sales as calculated from the average of the preceding three (3) years, whichever is greater, plus liquidated damages in an amount to be determined at trial, but not less than $52,500, together with interest, attorneys' fees, and costs of suit.

## EIGHTH COUNT

### (Breach of Contract: Post Termination Obligations)

100.    HouseMaster repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of the Verified Complaint.

101.    Basch agreed to post termination obligations and covenants detailed at Sections XI.C-J of the Franchise Agreement.

102.    Notwithstanding Basch's covenant and agreement, after expiration and termination of the Franchise Agreement, Basch failed to comply with any of the post termination obligations and covenants at Sections XI.C-J of the Franchise Agreement.

103.    For example, pursuant to Section XI.D of the Franchise Agreement, upon termination or expiration of the Franchise Agreement, Basch agreed that HouseMaster "has the sole right to and interest in all telephone numbers and directory listings associated with" the HouseMaster franchised business.  Basch agreed "to assign immediately to [HouseMaster] any and all business telephone numbers used by [Basch] . . .  in the conduct or promotion of the Franchised Business."  In furtherance of this provision, Basch executed a Conditional Assignment of Franchisee's Telephone Numbers attached to the Franchise Agreement as Exhibit A.  Basch has failed to assign the telephone numbers and directory listings.

19

104.     Basch's failure to comply with the terms, obligations and covenants at Sections XI.C-J of the Franchise Agreement constitutes a breach of the Franchise Agreement and has damaged HouseMaster.

105.     Basch's failure to comply with the terms, obligations and covenants at Sections XI.C-J of the Franchise Agreement constitutes unjust enrichment and has damaged HouseMaster.

**WHEREFORE**, HouseMaster demand judgment against Basch: (a) in the amount of $25,000 for each of Sections XI.C-J of the Franchise Agreement which Basch is deemed to have breached, (b) liquidated damages in amounts to be determined at trial, (c) compelling Basch to comply with the terms, obligations and covenants at Sections XI.C-J of the Franchise Agreement and the Conditional Assignment of Franchisee's Telephone Numbers attached to the Franchise Agreement as Exhibit A, and (d) interest, attorneys' fees, and costs of suit.

LeClairRyan
Attorneys for Plaintiff
HM Services, LLC d/b/a HouseMaster®

By: _____
      David S. Catuogno, Esq.
      One Riverfront Plaza
      1037 Raymond Boulevard, 16th Floor
      Newark, New Jersey 07102
      T: (973) 491-3600
      F: (973) 491-3555

                    and

      885 Third Avenue
      16th Floor
      New York, New York 10022
      T: (212) 697-6555
      F: (212) 986-3509

Dated:  August 28, 2017

## VERIFICATION

STATE OF NEW JERSEY   )
                      ) ss:
COUNTY OF SOMERSET  )

     Kathleen Kuhn, of full age, being duly sworn according to law, upon his/her oath, deposes and says:

     I am the President for HM Services, LLC d/b/a HouseMaster® House, which is plaintiff in this action.

     I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of HouseMaster, LLC or information available through employees of HM Services, LLC d/b/a HouseMaster®.

                       Name: Kathleen Kuhn

Sworn and subscribed to before
me on this 24th day of August, 2017

NOTARY PUBLIC   Attorney as Notary

21