UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HM SERVICES, LLC, d/b/a HOUSEMASTER®, a Delaware Limited Liability Company, | Civil Action No. 17-cv-5077(ERK)(VMS) |
| Plaintiff, | |
| v. | |
| WILLIAM BASCH, an individual, and DEPENDABLE INSPECTION ENTERPRISES, INC., a New York Corporation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF REQUEST OF HM SERVICES, LLC D/B/A HOUSEMASTER® FOR A PRELIMINARY INJUNCTION**

The plaintiff HM Services, LLC d/b/a HouseMaster® LLC ("HouseMaster") is one of the oldest and most respected home inspection companies in the United States and is widely known as a provider of franchised home inspection services. HouseMaster faces imminent and irreparable harm from the continued unauthorized use of its name and trademarks by the defendants – a harm which is compounded by the fact that the defendants' infringing use of these marks is currently the only use of the HouseMaster's registered trademarks in the lucrative and unique New York home inspection services market. For the reasons set forth in this Memorandum of Law, HouseMaster requests that this Court issue a preliminary injunction enjoining the defendants from further infringement of HouseMaster's trademarks in violation of federal law and the parties' now terminated franchise agreement.

00427422 - 1

**SUMMARY OF ARGUMENT**

Pursuant to a certain franchise agreement, HouseMaster licensed the use of its trademarks to the defendant franchisees in order to allow them to operate home inspection services in New York as part of the HouseMaster franchise system. The franchise agreement expired and terminated on November 30, 2015. After the expiration and termination of the franchise agreement, defendants continued to use HouseMaster® signage, including signage using similar trade dress, color schemes, font, logo, architectural features, telephone number, and a confusingly similar name, specifically "*Master Inspection Services*", on the Internet, and in other public areas, all within view of the public, in order to induce the public to use home inspection services. The defendant franchisees also owe HouseMaster more than $21,000.00 under the terms of the franchise agreement and an additional sum of more than $15,000.00 on account of a promissory note extended by HouseMaster to the defendants.

Following the expiration and termination of the franchise agreement, HouseMaster demanded that the defendant franchisees cease and desist use of the trade names, trademarks and service marks of HouseMaster and refrain from participating in the HouseMaster franchise system. HouseMaster also demanded that the franchisees satisfy their post termination non-monetary obligations under the franchise agreement and pursuant to applicable law.

The defendant franchisees have ignored HouseMaster's demands, as well as their legal obligations, and they continue to utilize the HouseMaster trademarks, trade names and service marks unlawfully to mislead the public into believing that the franchisees are affiliated with the HouseMaster® brand. By this Order to Show Cause, HouseMaster seeks to compel the defendants to end their unlawful infringement and satisfy their post termination non-monetary obligations by,

among other things, de-identifying their home inspection services business from their appearance as approved HouseMaster affiliated establishments.

As demonstrated herein, HouseMaster has clearly established that (1) it is likely to suffer irreparable injury if relief is denied and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation. In addition, HouseMaster has clearly established a balance of hardships tipping decidedly in its favor. As a result, the requested injunctive relief is warranted and should be granted.

## STATEMENT OF FACTS

In support of its request for preliminary injunctive relief, HouseMaster relies upon the facts recited in the Verified Complaint filed on August 28, 2017 (Docket No. 1), as well as the exhibits thereto. Undefined terms which are capitalized herein, shall have the meaning ascribed to them in the Verified Complaint.

## **ARGUMENT**

### THE DEFENDANTS SHOULD BE REQUIRED TO IMMEDIATELY CEASE USE OF THE HOUSEMASTER® MARKS AND DE-IDENTIFY THEIR BUSINESS

Rule 65 of the Federal Rules of Civil Procedure governs a moving party's application for a preliminary injunction. In the Second Circuit, an applicant for a preliminary injunction must demonstrate (1) whether the plaintiff is likely to suffer irreparable injury if relief is denied; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor. *Proctor & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 118 (2d Cir. 1984) (*citing Coca-Cola v. Tropicana Products, Inc.*, 690 F.2d 312, 315 (2d Cir. 1982)). *See also United States v. Siemens Corp.*, 621 F.2d 499, 505 (2d Cir. 1980); *KMW Intern. v. Chase Manhattan Bank, N.A.*, 606 F.2d 10 (2d Cir. 1979); (*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). In a trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988).

A. **HouseMaster Will Suffer Irreparable Injury If Defendants Are Not Restrained**

Loss of control and goodwill cause irreparable harm. *See Power Test Petroleum Distribs., Inc. v. Calcu Gas Inc.*, 754 F.2d 91, 95 (2d Cir. 1985) ("[I]rreparable injury, exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial [because] [r]eputation is not calculable nor precisely compensable."]. Further, "few harms are more corrosive in the marketplace than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." *Hypertherm, Inc. v Precision Products, Inc.*, 832 F.2d 697, 700 (1st Cir. 1987).

A presumption of irreparable injury derives from the recognition that the existence of trademark rights protects the owner's right to control the use of his or her mark; the owner's name, reputation, and goodwill; and the owner's right to identify those goods and services which derive exclusively from it. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* Sec. 30:47 (4th ed. 1996) (injury to goodwill and reputation "is real but difficult to measure in dollars and cents"); see *Abbott Laboratories v. Mead Johnson & Company,* 971 F.2d 6, 16 (7th Cir. 1992). Here, HouseMaster's proofs establish not merely a presumption of irreparable injury, but the actual existence of irreparable injury on an on-going basis that will never be adequately compensable through a calculation of monetary damages.

The HouseMaster brand is one of the oldest and most respected home inspection companies in the United States and is widely known as a provider of franchised home inspection services. HouseMaster, through its predecessors, first used certain of the HouseMaster® Marks in 1979 and the HouseMaster® Marks are in full force and effect. Certain of the registered HouseMaster® Marks are incontestable pursuant to 15 U.S.C. § 1065. *See* Verified Complaint at ¶ 12. HouseMaster has invested substantial effort over a long period of time, including significant sums of money, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the HouseMaster® Marks as distinctly designating HouseMaster® home inspection services as originating with HouseMaster or a franchisee of HouseMaster. *See* Verified Complaint at ¶ 19. The value of the goodwill developed in the HouseMaster® Marks does not admit of precise monetary calculation, however, because HouseMaster is one of the oldest and most respected home inspection franchise systems in the United States and is widely known as a provider of home inspection services, the value of HouseMaster's goodwill is extremely significant. *See* Verified Complaint at ¶ 20.

By breaching their franchise agreement with HouseMaster, but then nonetheless by continuing to use the HouseMaster® Marks, and marks confusingly similar thereto and the telephone number associated with the franchised business (718.384.1122), in the New York metropolitan area, the defendants are violating HouseMaster's right to control its name and trademarks in one of the most valuable and unique home inspection services market in the United States. More particularly, the defendants' continued use of the HouseMaster® Marks, despite the termination of the franchise agreement, results in the untenable and undeniably damaging circumstance that the only use of the HouseMaster® Marks is an unauthorized use.

HouseMaster respectfully submits that the use of its marks and confusingly similar name in the New York metropolitan area by a former franchisee and unauthorized user is, by itself, concrete and conclusive proof of genuine injury to its name and reputation, goodwill, and control of its mark that can never be adequately addressed by money damages. As such, it is clear that this is not a case of mere presumption or speculation.

The Court may not be able to precisely quantify the on-going harm caused by the defendants' infringing acts; or by HouseMaster's inability to completely control its reputation in the New York metropolitan market; or by the impairment of HouseMaster's present ability to fully exploit or market its own services in New York. Such extraordinary damage is exactly why injunctive relief is appropriate. Moreover, the inability to control the use of the HouseMaster® Marks threatens harm to the entire HouseMaster franchise system – not merely to HouseMaster itself. The District Court in *Petro Franchise Systems, LLC v. All American Properties, Inc.,* 607 F.Supp.2d. 781 (W.D.Tex. 2009) observed that harm is caused to a franchisor and its system when the marketplace believes that a former franchisee's services remain sponsored by the franchisor. *Petro Franchise Systems,* 607 F.Supp.2d at 795. With words equally applicable to this matter, the court explained:

> In this case, that belief is almost certain. Franchisees hold themselves out as Petro franchises, and promote and reinforce customers' beliefs that they are licensed by Petro. For example, if Franchisees fail to provide the quality of service customers expect, customers will almost certainly attribute the poor service to Plaintiffs and could be discouraged from returning to other Petro franchises in the future.

*Petro Franchise Systems,* 607 F.Supp.2d at 795.

The harm to HouseMaster in this case is no mere presumption. Consistent with the facts and law outlined above, the harm is genuine, tangible, and on-going – despite being impossible to measure with monetary damages. In the absence of an injunction, HouseMaster will continue to suffer irreparable harm.

B.      **HouseMaster Has Shown a Likelihood of Success on the Merits**

Section 32 of the Lanham Act, codified at 15 U.S.C. §1114(1)(a), provides in pertinent part: "[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant ...."

To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion. *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993); *see, e.g., Virgin,* 335 F.3d at 146 (noting that the *Gruner* test applies to infringement claims brought under §§ 1114 and 1125(a)). The first element of a trademark infringement action is easily established by HouseMaster. 15 U.S.C. §1115(a) provides that a mark registered on the principal register and owned by a party to an action "shall be *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of

7

the registrant's exclusive right to use the registered mark in commerce..." (emphasis added). HouseMaster has registered the HouseMaster® Marks upon the principal register of the United States Patent and Trademark Office. *See* Verified Complaint ¶¶ 10-21. HouseMaster has thus submitted *prima facie* evidence of its ownership in valid and legally protectable trademarks -- satisfying the first element of a trademark infringement claim.

The final element of an infringement action, the likelihood of confusion, is also present. Here, the defendants continue to use the HouseMaster® Marks and marks confusingly similar to the HouseMaster® Marks, specifically "*Master Inspection Services*", on the Internet, and in other public areas, all within view of the public, and the telephone number associated with the franchised business (718.384.1122), in order to induce the public to use home inspection services, in violation of the Franchise Agreement and applicable law. *See* Verified Complaint at ¶ 49 and Certification of David S. Catuogno ("Catuogno Certification"), which outlines defendants' continued unauthorized use of the HouseMaster® Marks.

To evaluate the likelihood of consumer confusion, the Second Circuit applies the multi-factor test set forth by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). This test requires analysis of several non-exclusive factors, including: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting its mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers. *See Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 256 (2d Cir.1987) (citing *Polaroid,* 287 F.2d at 495); *Gruner,* 991 F.2d at 1077. No single factor is dispositive, nor is a court limited to consideration of only these factors. *Polaroid,* 287 F.2d at 495. Further, "each factor must be evaluated in the context of how it bears on the ultimate question of

likelihood of confusion as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986).

Here, the strength of the HouseMaster® Mark is incontestable as HouseMaster is one of the oldest and most respected home inspection companies in the United States and is widely known as a provider of franchised home inspection services since 1979.  Next, the degree of similarity between the HouseMaster® Marks and defendants' marks are substantial.  For example, the HouseMaster® Mark is as follows:

# HouseMaster®

The unauthorized mark used by defendants to promote their home inspection service is as follows:



Not only do the above marks share a confusingly similar name, the font, color, and logo are also confusingly similar.  As such, it is clear that the above marks are confusingly similar.

Furthermore, the competitive proximity of HouseMaster's services and defendants' services are both provided in the New York metropolitan area and will clearly lead to confusion by

9

consumers seeking home inspection services therein. Finally, the defendants lack good faith in adopting their marks because they are a former franchisee and simply adopted a mark that is confusingly similar to the HouseMaster® Mark.

Thus, there is no question that HouseMaster is, at least, likely to succeed on the merits of establishing the defendants' infringement. The appropriate remedy is the requested injunction. *See* 15 U.S.C. §1117.

C. **The Balance of Hardships Favors HouseMaster**

In addition to considering whether the plaintiff will suffer irreparable harm in the absence of a preliminary injunction, the Court must assess the balance of hardships between the plaintiff and defendant. Irreparable injury and the balancing of hardships are related in considering the harm to the parties. *See Salinger v. Cotling*, 607 F.3d 68, 81 (2d Cir. 2010). In this instance, there is no indication that the defendants would suffer any harm. *See Cadence Design Sys. v. Avant! Corp.,* 125 F.3d 824, 829 (9th Cir. 1997) ("a defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities").

Further, the HouseMaster Marks have been established since 1979, while defendants have been using the name "*Master Inspection Services*," for less than two years. The Court in *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 326–27 (S.D.N.Y. 2010) held as follows:

> The hardships here weigh in favor of Plaintiff due to its exclusive, long-term and well-known use of the NYC TRIATHLON Marks. Any harm to Defendant, who has not used the name "NYC Triathlon Club" for very long, who therefore has little or no goodwill established, and who has other names and marks available to it, would not outweigh the irreparable harm and damage to Plaintiff should Defendant continue its infringing and confusing use of Plaintiff's name and Marks.

*Id*. at 326-37 (*citing Stern's Miracle-Gro Prod., Inc. v. Shark Prod., Inc.*, 823 F. Supp. 1077, 1093-94 (S.D.N.Y. 1993) (the court concluded that the balance of hardships decidedly favored the plaintiff after taking into account the facts that the defendant had only been using the mark in dispute ("Miracle–Gro"), for 18 months and that the defendant had another name available for its products).

As such, it is clear that the balance of hardships favors HouseMaster and, therefore, injunctive relief is warranted.

**D.     Issuance of the Requested Injunction Furthers the Public Interest**

Trademark laws exist to protect the public from confusion. *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000). "Enjoining violation of federal statutes is in the public interest." *Am. Trucking Associates, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1060 (9th Cir. 2009). In a trademark case, the public interest "is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of America*, 920 F.2d 187, 197 (3d Cir. 1990). *See also Bill Blass, Ltd.,* 751 F.2d 152, 156 (3d Cir. 1984) (there is a public interest in the protection of the trademark and to avoid confusion in the public).

When a consumer seeks home inspection services via a home inspection service office bearing the HouseMaster® Marks, and marks confusingly similar to the HouseMaster® Marks, that consumer has a right to expect that the agency is approved by HouseMaster and will live up to HouseMaster's high standards. The public interest is advanced by restraining the defendants from continuing to misinform the public and compelling the defendants to de-identify their infringing marks and confusingly similar marks. As such, the injunction should issue and the defendants should be required to cease use of the HouseMaster® Marks, and confusingly similar name, specifically "*Master Inspection Services*", as well as the telephone number associated with the

franchised business (718.384.1122) and de-identify pursuant to the terms of the franchise agreement.

## CONCLUSION

For the foregoing reasons, HouseMaster respectfully requests entry of a Preliminary Injunction: (i) enjoining the defendants from using the HouseMaster® Marks and confusingly similar name, specifically, "*Master Inspection Services*"; (ii) requiring the defendants to de-identify their office from their appearance as a HouseMaster affiliated establishment; (iii) requiring the defendants to refrain from any representation to the public that the defendants are franchisees of HouseMaster and compelling the defendants to take any affirmative action necessary to remove any use of the HouseMaster® Marks in connection with the defendants' business; (iv) requiring the defendants to immediately advise all of their current clients that the defendants are no longer associated with HouseMaster; (v) requiring the defendants to immediately cease the use of the telephone number associated with the franchised business (718.384.1122) and cause the local phone company and any business phone publisher to remove the defendants from their listings as a HouseMaster franchisee in their next addition of any directory, including any internet directory; (vi) requiring the defendants to immediately cease the use of the website www.masterinspectionservices.com, and cause any web masters or websites to remove the HouseMaster® Marks from their web pages, including social media websites, and requiring the defendants to remove the Marks from the social media sites and accounts that the defendants control, including the defendants' websites, including from any source code or other mechanism that directs a consumer searching for any of the HouseMaster® Marks to the defendants' websites; (vii) ordering defendants to cease and desist from using the HouseMaster® Marks in any advertising, printed materials or materials distributed in an electronic format; and (viii) ordering

defendants to satisfy their other post termination non-monetary obligations imposed under the franchise agreement.

Respectfully submitted,

Dated:  October 17, 2017

By: /s/ David S. Catuogno
David S. Catuogno
**LeClairRyan**
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600

885 Third Avenue – 16th Floor
New York, New York 10022
212-697-6555

Attorneys for Plaintiff,
HM Services, LLC d/b/a HouseMaster®